**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT L. KRUG and BONNIE S. KRUG,**

                                                        **Plaintiffs,**

     **-against-**                                              **1:04-CV-0640**
                                                                **(TJM/DRH)**
**THE COUNTY OF RENNSELAER;**
**THE CITY OF TROY POLICE DEPARTMENT;**
**NICHOLAS KAISER, Police Chief; JACK MAHAR,**
**Captain; JOHN WATERS, Sergeant; RICHARD**
**SCHOONMAKER, Police Officer; LEE F. HESS,**
**Police Officer; CHIRSTOPHER CIEPLIK, FBI**
**Special Agent, Individually and in their official capacities,**

                                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.    INTRODUCTION**

     Plaintiffs Robert L. and Bonnie S. Krug commenced this action _pro se_ on June 4,

2004 asserting thirty-five (35) causes of action contending that their rights secured by the

United States Constitution were violated.  The claims arise from circumstances

surrounding Plaintiff Robert L. Krug's arrest, prosecution, and conviction for attempted

armed robbery. See generally Compl. [dkt. # 1].  Plaintiffs amended their Complaint on

July 28, 2004 to include additional defendants which increased the number of causes of

action to forty-eight (48).  See 1st Am. Compl. [dkt. # 4].  On April 11, 2005, after obtaining

leave, Plaintiffs filed a second Amended Complaint.  The second Amended Complaint,

1

which the Court deems to have superseded the first Amended Complaint, does not

separate the claims into independent causes of action but rather generally asserts

violations of the United States Constitution, the Americans with Disabilities Act, and New

York State law.  See 2nd Am. Compl. [dkt. # 40] ("Am. Compl.").  Plaintiffs seek

declaratory, monetary, and injunctive relief.  Id. pp. 23-25.

In January, February, and March 2006, Defendants filed motions to dismiss or for

summary judgment.  See Motions by: (1) the City of Troy, New York and all individual

defendants employed by the City of Troy ("the City defendants") [see dkt. # 66];  the

County of Rensselaer [see dkt. # 67]; and (3) the Defendant Chirstopher Cieplik ("Cieplik")

[see dkt. # 77] .  On April 6, 2006, Magistrate Judge Homer granted a stay of discovery

pending resolution of the outstanding motions.  See 4/26/06 Order [dkt. # 87].  Because

the pending motions relied on documents outside the pleadings,[1] the Court treated them

as motions for summary judgment.  On September 8, 2006, the Court denied with leave to

renew Defendants' motions because Defendants failed to comply with certain procedural

requirements, including serving the pro se Plaintiffs with "Critical Notices" advising them of

the requirements of the Federal and Local Rules when responding to a motion for

summary judgment.  See 9/8/06 Dec. & Ord., [dkt. # 97]; N.D.N.Y.L.R. 56.2.

Each set of defendants then promptly corrected their procedural deficiencies and

re-filed their motions.  See dkt. # 98 (motion by the City of Troy and all individual

defendants employed by the City of Troy ("the City defendants")); dkt. # 99 (motion by the

---

[1] See motions by (1) the City of Troy, New York and all individual defendants employed by the City of Troy ("the City defendants") [dkt. # 66];  (2) the County of Rensselaer [dkt. # 67]; and (3) Chirstopher Cieplik ("Cieplik") [dkt. # 77].

County of Rensselaer); and (3) dkt. # 101 (motion Defendant Chirstopher Cieplik ("Cieplik")).[2]  These renewed motions are now before the Court.  Because the motions were renewed, the stay of discovery remained in effect.

Soon thereafter, the Court began granting a series of adjournments due to Robert Krug's medical difficulties.  See dkt. # 104 (adjourning return date of motions to 12/11/06 and extending opposition filing date to 11/27/06); dkt. #  106 (adjourning return date of motions to 3/12/07); dkt. # 132 (adjourning return date of motions to 7/9/07); dkt. # 136 (adjourning return date of motions to 9/10/07); dkt. # 138 (adjourning return date of motions to 11/13/07); dkt. # 141 (granting final adjournment of return date of motions to 3/10/08).

On November 30, 2006, the Appellate Division of the New York State Supreme Court, Third Department, issued a decision that reversed Mr. Krug's conviction, vacated his guilty plea, and remitted the matter to Rensselaer County Court for further proceedings.  See People v. Krug, 824 N.Y.S.2d 499, 500 (3rd Dept. 2006); O'Connor 12/15/06 ltr. [dkt. # 111].  This Court ordered further briefing on the impact of this development.  See 12/22/06 Order [dkt. # 112.  Defendants complied, arguing, essentially, that the motions could and should be decided on their merits. See dkt. # 113, dkt. # 118, and dkt. # 126.

In July of 2007, the Court arranged for an attorney from the Albany area to represent the Plaintiffs pro bono.  Plaintiffs declined the proffered representation and requested an additional adjournment. Dkt. # 137.  The Court granted a "final adjournment"

---

[2]These motions rely, in substantial part, on the papers submitted on the previously-filed motions for summary judgment. See fn. 1, supra.

to March 10, 2008. <u>See</u> 10/23/07 Order, dkt. # 141.  Pursuant to this Order, Plaintiffs'

opposition papers were due on February 22, 2008. <u>Id.</u>; <u>see</u> N.Y.N.D. Local Rule

7.1(b)("The party opposing the motion must file its opposition papers with the Court and

serve them upon the other parties not less than **SEVENTEEN DAYS** prior to the return

date of the motion.")(emphasis in original).  Plaintiffs **did not** file timely opposition, but,

instead, filed a letter on March 6, 2008 indicating that they were *intending* to file opposition

papers but did not do so because they believed that their opposition papers were due on

the return date of the motion - April 10, 2008.  <u>See</u> dkt. # 143.[3]   Despite the

representation that they believed that their papers were due on April 10, 2008 (*e.g.* 4 days

after they filed their letter of "intent" to oppose the motions), they requested yet another

adjournment.  <u>Id.</u>  The Court denied the request but granted Plaintiffs leave to file late

papers by  4:00 P.M. on March 19, 2008.  Plaintiffs **did not** comply with this last

extension,[4] and instead filed opposition papers to two of the three motions mid-morning on

March 20, 2008.  In that the Court finds that Plaintiffs have been afforded more than

ample opportunity to submit timely responses, the Court will decide the motions on the

materials submitted to date.[5]

---

[3] Ironically, in opposing Defendants' motions, Plaintiffs provide a lengthy exposition on the ways that Defendants purportedly violated the Northern District's Local Rules, yet they failed to comply with Local Rule 7.1(b) despite adjournments for over a year and a half.

[4] On March 19, 2008, at approximately 3:45 P.M., Chambers received a telephone call from the Clerk's Office indicating that Mr. Krug was on the telephone claiming that he and his wife had completed responses to two of three pending motions, but were having computer problems and could not retrieve the third response.  Apparently he was requesting another adjournment or extension of the date to file his papers. The oral  adjournment and extension request was denied and the Clerk's Office was instructed to convey to Mr. Krug to timely file the responses that he had completed and to submit a written request for the extension for the third response.

[5] Plaintiffs have not filed opposition to Defendant Cieplik's motion.

4

## II.    STANDARD OF REVIEW

The Court may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

In determining whether to grant summary judgment, the Court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, --- U.S. ----, 127 S. Ct. 1769, 1776, 167 L. Ed.2d 686 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

Id. at 1776.

The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita., 475 U.S. at 586, or by a factual argument based on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  In this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

"[P]roceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment." Viscusi v. Proctor & Gamble, 2007 WL 2071546, at * 9 (E.D.N.Y. July 16, 2007).  The Plaintiffs, like all parties, must follow the procedural formalities of Local Rules, including Local Rule 7.1(a)(3).[6] Govan v. Campbell, 289 F.

---

[6]The Local Rules of the Northern District require a party moving for summary judgment to submit a "Statement of Material Facts" which

> shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits.

N.D.N.Y.L.R. 7.1(a)(3).  Once a properly supported Local Rule 7.1(a)(3) Statement is submitted, the party opposing the motion must

> file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

(continued...)

6

Supp.2d 289, 295 (N.D.N.Y. 2003);  see also Faretta v. California, 95 S. Ct. 2525, 2541 n.

46 (1975)("The right of self-representation is not a license . . . not to comply with relevant

rules of procedural and substantive law."); Edwards v. INS, 59 F.3d 5, 8 (2ⁿᵈ Cir.

1995)("While a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants

generally are required to inform themselves regarding procedural rules and to comply with

them.").

## III.   BACKGROUND[7]

Plaintiffs claim that in the early morning of June 6, 2001, Robert Krug "suffered a

heart attack and or stroke, blacked out causing a fall and concussion precipitating:

hallucinations, delirium, dementia, amnesia, migraines, and or cognitive brain injury." Am.

Compl. ¶ 16.  Plaintiffs assert, however, that "Robert L. Krug has no memory of the events

that led to his subsequent arrest."  Id. n. 1.

---

[6](...continued)
Id. (underscoring in original).

The responding Statement of Material Facts is not a mere formality, and the courts  apply this rule strictly. See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts); Meaney v. CHS Acquisition Corp., 103 F. Supp.2d 104, 108 (N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth *no* citations – specific or otherwise – to the record")(emphasis in original); McKnight v. Dormitory Auth. of State of N.Y., 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy, J.)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); Osier v. Broome County, 47  F. Supp.2d 311, 317 (N.D.N.Y. 1999) (McAvoy, J.)(deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record").

[7]The background facts set forth in the text are taken, *inter alia*, from Plaintiffs' second Amended Complaint, which is verified, and those portions of Defendants' Local Rule 7.1(a)(3) Statements of Material Facts which are properly supported and for which Plaintiffs have not properly or adequately contested.

At approximately 10:45 a.m. on June 6, 2001, an individual walked into the HSBC Bank on Second Avenue in Troy, New York and handed the manager a note stating, essentially, that he had an explosive device in his brief case that could be detonated by remote unless he was provided with money from the bank, that there was more than one person involved in the robbery, and that some of the bank employees' family members were being monitored and could be harmed or taken hostage if problems occurred. City Defs. L.R. 7.1(a)(3) Stat. Mat. Facts ("City SMF") ¶ 1.  The individual then abandoned his attempt to rob the bank and walked out of the building.  Id. ¶ 2.   At 11 a.m., City of Troy Police Officer Richard Schoonmaker responded to the scene and encountered an HSBC Bank employee leaving the bank. City Def. Ex. F (transcript of oral decision in suppression hearing in People v. Robert Krug, Indictment # 01-1095  (Ren. County Ct. June 25, 2002)) pp. 110-11.  The employee gave Schoonmaker a description of the perpetrator and then, as the bank employee saw the perpetrator in an alley about a block from the bank, identified the perpetrator. Id.[8]   Schoonmaker apprehended the person in the alley who turned out to be Robert Krug. Am. Compl. ¶ 16.  Based upon the identification and because Krug matched the description of the perpetrator, see fn 8, supra, Schoonmaker arrested Krug for attempted robbery. City SMF ¶ 3;  Am. Compl. ¶ 16.  Krug was searched and found to be possession of a .22 caliber pistol.  Am. Compl. ¶ 16.

Schoonmaker transported Krug to the Troy Police station in Schoonmaker's police car.  Krug was not Mirandized but stated, when asked, that his name was Robert Krug.

---

[8]As indicated by the Hon. Patrick J. McGrath, Rensselaer County Court Judge, the perpetrator of the attempted robbery at the HSBC Bank was identified as wearing an arm sling, a wig, and a fake mustache and goatee.  When Officer Schoonmaker apprehended Krug, matched this description, including having his arm in a sling. City Def. Ex. pp. 111-12.

City Def. Ex. F, p. 112.  "A few seconds after responding to Officer Schoonmaker's question, [Krug] made other statements to the effect[:] '[H]e made me do it. Eric made me do it.  He was waiting for me down from the bank.'" Id.[9]

At the police station, Krug was Mirandized but refused to sign a waiver of rights form or answer any questions. County of Rensselaer's  L.R. 7.1(a)(3) Stat. Mat. Facts ("Rens. SMF") ¶ 10; City Def. Ex. F.   Krug requested an attorney and one was appointed for him. City Def. Ex. F; Am. Compl. ¶ 16.

On the morning of June 7, 2001, after learning of her husband's arrest on a television news broadcast, Plaintiff Bonnie Krug contacted the Troy Police Department to inquire about her husband's whereabouts and was told that if she wished to see her husband, she could go to the Troy City Court where he was to be arraigned. Am. Compl. ¶ 18.  Krug was arraigned in Troy City Court, Criminal Part that morning. Rens. SMF  ¶ 11. Although Bonnie Krug asserts that she went to Troy on June 7, 2001 only to see her husband and not to talk to the police,[10] she brought with her and gave to the police a letter written by her husband that she found at their residence. City SMF ¶ 5.  The letter was a copy, or draft, of the note given to the manager of the HSBC Bank during the attempted robbery. Id. ¶¶ 5-6.

Once at the Troy Police Station, Bonnie Krug contends that she was detained by Sergeant John J. Waters of the Troy Police Department for several hours and interrogated

---

[9]Plaintiffs seemingly contest this fact but, inasmuch as Robert Krug attests that he has no memory of the events on June 6, 2001, and was alone with Schoonmaker when the statement was made, Schoonmacker's testimony at the suppression hearing (during which Krug had the opportunity to cross-examine on this issue is un-refuted.

[10]Bonnie Krug asserts that once at the Courthouse, she was directed to the nearby Troy Police Station and told that she had to speak with certain Troy City Police officers. Am. Compl. ¶ 18.

about her and her husband's connection to the attempted robbery. Am. Compl. ¶¶ 20-24.

During her time with Waters, Bonnie Krug signed a "Permission to Search Premises" form

regarding her residence with Robert Krug in New Baltimore, New York.  Rens. SMF  ¶ 13.

She contends that her consent to search was not voluntarily given but rather was the

product of coercion because, at the time, she was being held in custody, did not read the

statements on the form, and was not advised of her "constitutional or statutory rights." See

Am. Compl. ¶¶ 19-25, 28, 36.

     While Bonnie Krug was at the police station, Waters called Renssalear County

Assistant District Attorney Joseph M. Ahearn to inquire whether the police needed a

search warrant in addition to the consent form to search the residence. See Ahearn Aff. ¶

4.  ADA Ahearn advised that a search warrant was not necessary provided Bonnie Krug

consented. Id.  ADA Ahearn asserts that he was never advised, nor did he have any

reason to believe, that Bonnie Krug was "in custody" at the time she signed her consent.

Id.

     After signing the form, Bonnie Krug was transported by Waters to the Federal

Bureau of Investigation (FBI) office in Albany where they waited in the car for Defendant

Cieplik, a Special Agent with the FBI. Am. Compl. ¶¶ 23-27.   Cieplik went with Waters,

Troy Police Officers Lee Hess and Terrence Buchanan, and Bonnie Krug to search

Plaintiffs' residence in New Baltimore, New York.  Id.; Rens. SMF ¶ 14.  During the course

of the search, Bonnie Krug executed a second "Permission to Search Premises" form for

the adjoining residential property which Plaintiffs also owned. Rens. SMF  ¶ 14.  While at

the second property, Officer Hess asked Krug for permission to search two vans on the

property.  City Def. Ex. F, p. 118.  Krug gave him the keys to one van and he searched it,

but she could not find a key to the second van so it was not searched. Id.

On June 13, 2001, the Troy City Court, Trial Part issued a search warrant pursuant to New York Criminal Procedure Law ("CPL") § 690.50 which authorized the search of Robert L. Krug's 1989 Oldsmobile, vehicle identification number  2G3AM51N7K230, and his brown briefcase.   Id. ¶ 15.   The search of the briefcase resulted in the seizure of various papers. Id. ¶ 16.

On July 12, 2002, a preliminary hearing was held in Troy City Court, Criminal Part, in connection with the prosecution of Robert Krug for the attempted robbery of the HSBC Bank. Id. ¶ 17.   Krug waived his appearance at the preliminary hearing through his counsel pursuant to CPL §180.60.   Id. ¶ 18. Upon the completion of testimony, the Court found reasonable cause to believe that a felony was committed by Robert Krug and the matter was bound over for Grand Jury proceedings. Id. ¶ 19.

On August 3, 2001, the Office of the District Attorney, County of Rensselaer served Robert Krug's counsel in the criminal matter with notice pursuant to CPL § 190.50 of its intent to present evidence to the Grand Jury of Rensselaer County on August 14, 2001 at 9:30 a.m. Id. ¶ 20.  On August 9, 2001 the District Attorney served Krug's counsel a second notice pursuant to CPL §190.50 of its intent to present evidence to the Grand Jury on August 21, 2001 at 9:30 a.m. Id. ¶ 21.  On August 21, 2001, the District Attorney presented evidence to the Grand Jury in connection with the alleged incident of June 6, 2001 at the HSBC Bank branch located at 600 Second Avenue in Troy, New York.  Id. ¶ 22.  At the conclusion of the proceedings, the Grand Jury returned a four count Indictment charging Robert Krug with two counts of attempted robbery in the first degree, criminal possession of a weapon in the third degree and criminal use of a firearm in the second

11

degree. Id. ¶¶ 23-24.

In response to Krug's omnibus motion, the Rensselaer County Court reviewed the Grand Jury minutes and determined that the evidence presented was not legally sufficient to sustain count one alleging attempted robbery in the first degree and count four alleging criminal use of a firearm in the second degree. Id. ¶ 25.  The County Court reduced count one of the Indictment to attempted robbery in the third degree and dismissed count four of the Indictment.  Id. ¶ 26. The County Court found that the evidence submitted to the Grand Jury was legally sufficient to support counts two and three of the Indictment. Id. ¶ 27.  The County Court found no defects in the Grand Jury proceedings which would warrant the dismissal of any counts of the Indictment pursuant to CPL § 210.35.  Id. ¶ 28.

On June 25, 2002, the County Court held a suppression hearing regarding issues raised in Robert L. Krug's omnibus motion. Id. ¶ 29.  At the conclusion of the hearing, the County Court found that the People had established by clear and convincing evidence that Bonnie Krug made a knowing, voluntary and free consent to search the two residences in New Baltimore, New York.  Id. ¶ 30.  In so concluding, the County Court found that Bonnie Krug read the forms before signing them, that the forms contained written warnings of the rights given up by signing the forms, and that her claims that she did not read or understand the forms were "incredible." City Defs. Ex. F, p. 119.  The County Court denied Robert Krug's motion to suppress evidence obtained from the two residences. Id. p. 121. However, the County Court determined that Officer Hess was mistaken in his belief that the consent forms included the vans located on Plaintiffs' properties, so the Court granted Krug's motion to suppress any evidence obtained from the vans.  Id. p. 120-121.  The County Court also concluded that Robert Krug's response to Officer's Schoonmaker's

12

question about his name was not the result of interrogation and, therefore, did not suppress that statement.  Id. p. 120. The County Court further concluded that Krug's statement about "Eric" was spontaneously given and would not be suppressed. Id.

On August 6, 2002, Robert Krug, through his counsel, withdrew his notice of intent to offer psychiatric evidence pursuant to CPL § 260.10(2).  Rens. SMF ¶ 31.  On August 12, 2004, Robert Krug appeared in Rensselaer County Court and pled guilty to attempted robbery in the first degree with an agreed upon sentencing range of between nine (9) and twelve and one-half (12½) years.  Id. ¶ 32.  Krug failed to appear for sentencing on September 24, 2002 and a bench warrant was issued pursuant to CPL § 530.70(2) on October 2, 2002. Id. ¶ 35.[11]  On December 19, 2002, Krug was sentenced by the Rensselaer County Court to fifteen (15) years incarceration. Id. ¶ 26.

On November 30, 2006, the Supreme Court, Appellate Division, Third Department reversed Robert Krugs's conviction because he was not advised at his plea allocution that his sentence had a post-release component. People v. Krug,  824 N.Y.S.2d 499, 500 (3rd Dept. 2006).  The People of the State of New York have elected to re-prosecute Robert Krug, and that criminal prosecution is presently pending. See 3/6/08 Letter from Plaintiffs.

## IV.    DISCUSSION

The Court starts by reiterating the basic principle that each claim stands or falls on its own merits, and each claim must be viewed from the perspective of each Plaintiff. While the claims in this case arise from the same event - Robert Krug's prosecution - each

---

[11]It is asserted in Rensselaer County's Memorandum of Law that Robert Krug was apprehended on Catalina Island in San Diego County, California on October 31, 2002, executed a waiver of extradition on October 31, 2002, and was then returned to Rensselaer County. See Ren. County Mem L. p. 2.

Plaintiff's interests are not the same.  Thus, while the Plaintiffs make arguments that blur the distinction between each Plaintiff's individual interests, the Court will address each claim as it pertains to each Plaintiff

### a.    Americans With Disabilities Act

Plaintiffs allege a violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"). See Am. Compl. p 1, 9, 10, 16; Pl. Response to City Defs. Motion, pp. 21-22. Title II of the ADA protects disabled persons from discrimination in the provision of public services.  Cercpac v. Health & Hosps. Corp., 147 F.3d 165, 167 (2d Cir.1998); 42 U.S.C. § 12132. The purpose of the statute is "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied."  Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)(citing Southeastern Comm. College v. Davis, 442 U.S. 397, 410, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)). Thus, a disabled individual must demonstrate disparate treatment from similarly situated "able-bodied" individuals in the provision of public service, or discrimination therein on account of disability. See  Aiken v. Nixon 236 F. Supp. 2d 211, 226-227 (N.D.N.Y. 2004), aff'd, 80 Fed. Appx. 146 (2d Cir. 2003)(unpublished decision).

Construing the Amended Complaint liberally, the ADA claim is submitted only on behalf of Robert Krug.[12] Construing the facts in the light most favorable to Plaintiffs, they have failed to set forth sufficient facts to support a viable ADA claim.  Assuming *arguendo* that Robert Krug would qualify as a protected individual under the ADA*,* he has not presented sufficient facts from which a reasonable fact finder could conclude that any of

---

[12] There is no allegation or evidence from which a reasonable fact finder could conclude that Bonnie S. Krug qualifies as a protected person under the ADA.

the Defendants treated him differently in providing public services than they treated "able bodied" criminal suspects.  Plaintiffs' broad conclusory allegations of disparate treatment or discrimination are insufficient to sustain the claim.  Id.  Accordingly, any claim under the ADA, whether for monetary or declaratory relief, is dismissed.[13]

### b.    First Amendment

_____The Amended Complaint alleges a "restriction of speech" in violation of the First Amendment.  Am. Compl. p. 1.  "A plaintiff asserting [a] First Amendment claim must allege that (i) he has an interest protected by the First Amendment, (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights."  Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998).

There is no allegation or evidence that Robert Krug engaged in any protected speech or activity, or that any defendant retaliated against him for engaging in protected speech or activity.  Accordingly, any First Amendment claim by Robert Krug is dismissed.

The Amended Complaint alleges that Sgt. Waters prevented Bonnie Krug from leaving the police station on June 7, 2001 to tell her in-laws that Robert Krug had been arrested. Am. Compl. ¶ 22.  It also alleges that Sgt. Waters "finally" allowed her to use her cell phone to call her in-laws "but would not allow her any privacy."  Id. ¶ 27.  To the extent Bonnie Krug's First Amendment claim is based upon Sgt. Waters' purported refusal to allow her to speak to her in-laws in person or by telephone, the claim is subsumed within

---

[13]Assuming *arguendo* that Bonnie Krug qualifies as a protected person under the ADA, Plaintiffs have failed to present sufficient evidence that she was treated differently than an "able bodied" witness in a criminal matter.

her Fourth Amendment false arrest claim (discussed *infra*).  There exists no independent

factual or legal basis to support a First Amendment claim.  There is no allegation or

evidence that Bonnie Krug engaged in any protected speech or activity, or that any

defendant retaliated against her for engaging in protected speech or activity.  Accordingly,

any First Amendment claim by Bonnie Krug is dismissed.

> ### c.    Equal Protection

Plaintiffs assert that their rights under the Equal Protection Clause of the

Fourteenth Amendment were violated.  The Court presumes that the claim is premised

upon Robert Krug's contention that he is in a class of disabled individuals and that he was

treated differently than those outside his class.

The Equal Protection Clause "is basically a direction that all persons similarly

situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S.

432, 439 (1985).

> "To prevail on a selective treatment claim [brought under the Equal
> Protection Clause], a plaintiff must show that (1) he was treated differently
> from other similarly-situated individuals; and (2) the differential treatment was
> based on impermissible considerations such as race, religion, intent to inhibit
> or punish the exercise of constitutional rights, or malicious or bad faith intent
> to injure a person." Skehan v. Village of Mamaroneck, 465 F.3d 96, 110 (2d
> Cir. 2006) (internal quotes omitted).  Additionally, a plaintiff may make out an
> equal protection claim "brought by a class of one, where the plaintiff alleges
> that she has been intentionally treated differently from others similarly
> situated and that there is no rational basis for the difference in treatment."
> Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060
> (2000).

Colandrea v. Town of Orangetown, 490 F.Supp.2d 342, 349 (S.D.N.Y. 2007).

Plaintiffs have not presented evidence from which a reasonable fact finder could

conclude that Robert Krug was treated differently than others similarly situated individuals

or, if he was, that the treatment was motivated by Robert Krug's physical or mental condition or by a malicious or bad faith intent to injure.  Accordingly, all equal protection claims asserted by Robert Krug are dismissed. See Pinnacle Nursing Home v. Axelrod, 928 F.2d 1306, 1317 (2d Cir. 1991)("The breadth of coverage under the equal protection clauses of the federal and [New York State] constitutions is equal.").   There is no factual basis for such a claim by Bonnie Krug, and thus all such claims are dismissed.

### d.    False Arrest

The Amended Complaint asserts federal and state law claims for false arrest by Bonnie Krug arising from her contention that her freedom was restrained by Waters's actions on June 7, 2001. The elements of a cause of action for false arrest brought under the Fourth Amendment and state common law are the same.  These are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996); Broughton v. State of New York, 37 N.Y.2d 451, 456 (1975); see Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)(Because false arrest is a type of false imprisonment, the two claims have identical elements.), cert. denied, 517 U.S. 1189 (1996).

Based on Bonnie Krug's allegations that she did not feel she was free to leave for several hours during the time she was with Waters on June 7, 2001, her claims of false arrest against Waters must survive summary judgment. It will be for a jury to decide whether, under the facts as they existed, a reasonable person in Bonnie Krug's position

would have felt that he or she was not free to leave. See County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998)(A Fourth Amendment seizure occurs whenever an individual is physically or constructively detained by a police officer in such a manner that a reasonable person would not feel he is free to leave).

Plaintiffs also assert that Defendants Kaiser, Mahar, Buchanan and Cieplik "were notified of these events and actively caused or acquiesced to Mrs. Krug's unlawful custody . . . ." Am. Compl. ¶ 26. Although these defendants deny their involvement in or knowledge of the circumstances of Bonnie Krug's purported custody on June 7, 2001, the motion by these defendants on this claim must be denied because discovery is not yet complete. Defendants will be entitled to renew their motion upon the completion of discovery. Inasmuch as the County of Rensselaer had no legal control over Waters and because there is no evidence that ADA Ahearn discussed anything with Waters concerning Bonnie Krug's purported confinement, there is no claim against that municipality.[14]  Because it is possible that the Plaintiffs' could prove that the City of Troy had a policy of failing to properly train or supervise its officers in conducting interviews of witnesses in criminal matters, the Monell claim against that municipality survives summary judgment. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); Wray v. City

---

[14]Plaintiffs are mistaken in their contention that ADA Ahearn was acting in an advisory, not prosecutorial, role when he spoke to Waters on June 7, 2001. At the time, Robert Krug had already been arrested after having been apprehended a block away and mere minutes after the attempted bank robbery, was identified by an eye witness, and matched a very detailed description of the perpetrator. Further, at the time of the conversation, Krug had been arraigned on the charges stemming from his arrest. Under these circumstances, Ahearn was acting is his prosecutorial role representing the People of the State of New York in Robert Krug's prosecution, not as a county legal adviser to the Troy Police Department on some potential future prosecution. See Lavin v. Thornton, 959 F. Supp. 181, 188-89 (S.D.N.Y. 1997). Further, to the extent Plaintiffs intimate that they desire to amend their complaint a third time to add a claim against Ahearn personally, the application is denied as futile. Ahearn is entitled to absolute prosecutorial immunity. Id.

of New York, 490 F.3d 189, 195-96 (2d Cir. 2007)(discussing failure to train claims).[15]

To the extent that Plaintiff Robert Krug submits a false arrest claim and contends that further discovery would yield evidence that would defeat the existence of probable cause for his arrest,[16] the claim must be dismissed under the holding of Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the Supreme Court held that

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. 486-87 (footnote omitted); see Channer v. Mitchell, 43 F.3d 786, 787 (2d

---

[15]Although a single, isolated constitutional tort by a municipal employee below the policy-making level will seldom be enough for a Monell claim, Plaintiffs contend that further discovery may yield evidence of other similar events.

[16]On the present record, a false arrest claim by Robert Krug would fail as a matter of law. Based upon the undisputed facts that he was arrested five minutes after the attempted robbery of the HSCB bank, was identified by a bank employee as the person who attempted to rob the bank, and fit the unique description of the perpetrator, Officer Schoonmaker had sufficient probable cause to arrest and detain Robert Krug. See Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004)("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.")(citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)); Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000)("It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness."); Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999)(Probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)(Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the Court as a matter of law.).  The fact that Officer Schoonmaker might have momentarily lost direct sight of Robert Krug while he was pursuing Krug in the alley does not defeat the finding of probable cause. See Hahn v. County of Otsego, 820 F. Supp. 54, 55 (N.D.N.Y. 1993)("A probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment."), aff'd, 52 F.3d 310 (2d Cir. 1995).  Accordingly, any false arrest claim asserted on the present record by Robert Krug would be dismissed on the merits. Weyant 101 F.3d at 852 (probable cause is a complete defense to both federal and state law claims for false arrest and false imprisonment).

19

Cir. 1994).

"In order to protect against such collateral attack against state convictions or sentences, the [Supreme] Court required proof that the state conviction or sentence has been invalidated before a §1983 action could arise." Covington v. City of New York, 171 F.3d 117, 124 (2d Cir. 1999), cert. denied, 528 U.S. 946, 120 S.Ct. 363, 145 L.Ed.2d 284 (1999).  These concerns "apply equally to claims that, if successful, would necessarily imply the invalidity of a future conviction on a pending criminal charge." Id. (quoting Smith v. Holtz, 87 F.3d 108 (3d Cir.), cert. denied 519 U.S. 1041 (1996)).

> "If such a [civil rights] claim could proceed while criminal proceedings are ongoing, there would be a potential for inconsistent determinations in civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. In terms of the conflicts which Heck sought to avoid, there is no difference between a conviction which is *outstanding* at the time the civil rights action is instituted and a *potential* conviction on a pending charge that may be entered at some point thereafter."

Id. (quoting Smith, 87 F.3d at 113 (emphasis in original)).  Thus, "if success on a Section 1983 claim would necessarily imply the invalidity of a conviction in a pending criminal prosecution, such a claim does not accrue so long as the potential for a judgment in the pending prosecution continues to exist." Id.

The circumstances underlying probable cause to arrest Robert Krug are the primary basis of People's prosecution of him. See fn. 16, *supra.*  Thus, success on a false arrest claim - which would require Krug to establish that there was not probable cause to arrest him because he was not the perpetrator of the attempted bank robbery on June 6, 2001 - would necessarily imply the invalidity of any potential conviction on the currently-pending prosecution.  Accordingly, Robert Krug's false arrest claim has not yet accrued and,

therefore, must be dismissed under <u>Heck</u> and <u>Covington</u>.

### e.      Fourth Amendment Searches and Seizures

#### 1.      Search of Residential Properties

Much of Plaintiffs' Amended Complaint and opposition to the pending summary judgment motion is addressed to the validity of the searches of Plaintiffs' residential properties in New Baltimore, New York. Plaintiffs' arguments in this regard fall into two categories.  The first is that Bonnie Krug's consents to search these properties were not given freely, voluntarily, and knowingly.  The second is that the consents were not valid because the forms were ambiguous and had "contractual limitations built in" that were violated. <u>See</u> Plt. Opp. to City's Motion, p. 4 ("The consent forms are one of plaintiff's [*sic*] main linchpins in [*sic*] present case." ).

As to the voluntariness of Bonnie Krug's consents to search the two residential properties, Defendants argue that the issue has already been decided and, therefore, is barred by the doctrine of collateral estoppel. <u>See</u> <u>Parker v. Blauvelt Fire Co.</u>, 93 N.Y.2d 343, 349 (1999); <u>Hoblock v. Albany County Board of Elections</u>, 422 F. 3d 77, 94 (2d Cir. 2005).

> Collateral estoppel, or issue preclusion, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ..., whether or not the tribunals or causes of action are the same. The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action. The burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in the prior action or proceeding.

Parker, 93 N.Y.2d at 349 (citations and quotation marks omitted).

In Robert Krug's criminal proceeding, one of the issues litigated at the suppression hearing was whether Bonnie Krug's consents to search the two residential properties were given freely, knowingly, and voluntarily.  As indicated above, the Rensselaer County Court found that the People had established by clear and convincing evidence that Bonnie Krug made knowing, voluntary and free consents to search the two properties.  The issue addressed in the County Court is identical to the issue raised here, and was "necessarily decided and material" in the criminal case.  Robert Krug presents no valid argument that he was denied a full and fair opportunity to litigate the issue in the prior proceeding.  Thus, any claim Robert Krug may have in this matter premised upon the involuntariness of his wife's consents to search the two properties is barred by the doctrine of collateral estoppel and must be dismissed.[17]

Whether Bonnie Krug's similar claim is also precluded by the doctrine of collateral estoppel is more difficult to resolve. Bonnie Krug was not the defendant in state court but she did present an affidavit and testified in open court in furtherance of the position that *her* rights were violated.  While it could reasonably be argued that she was in privity with her husband given their marital relationship and the joint ownership of the subject properties, see Buechel v. Bain, 97 N.Y. 2d 295, 303-05 (2001)(discussing privity in relation to the collateral estoppel doctrine), *she* was unable to appeal the decision in the suppression hearing.  Further, it is doubtful that *she* had significant control over the

---

[17]Assuming, *arguendo,* that Bonnie Krug establishes in this case that she was "in custody" at the time she consented to the searches, the County Court's decision would not be affected because persons in custody regularly give constitutionally valid consent to search properties.

presentation of proof in the state court proceeding. See Amalfitano v. Rosenberg, 2005 WL 2030313, *3 -*4 (S.D.N.Y. 2005)(discussing relevant factors in determining whether privity exists for purposes of collateral estoppel, including the extent to which the party against whom preclusion is asserted "exercised some degree of actual control over the presentation" of proof in the prior proceeding)(quoting Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber, 327 F.3d 173, 185 (2d Cir. 2003))).

Thus, while Bonnie Krug's claim appears exceedingly weak given the simplicity of the Troy Police Department's "Permission to Search Premises" form[18] and Judge McGrath's finding of her incredibility on her contention that she did not read or understand the warnings on the form, the Court must allow her Fourth Amendment claim to proceed on the theory that her consent to search was not voluntarily given.

While it appears that Sgt. Waters was the only defendant present when she executed her initial consent form, and while there appears to be little (if anything) upon which to conclude that Defendants Kaiser, Mahar, Buchanan, and Cieplik were aware that Krug's two consents were not voluntarily given, the claims must survive based upon Krug's allegation that these defendants were aware that her consents were involuntarily and because she has not had a full opportunity to conduct discovery. Further, although Defendants argue that they are entitled to qualified immunity on these claims, they have

---

[18]The form states in clear and concise language that the signatory has "been informed of my constitutional right not to have a search made of my premises hereinafter mentioned without a search warrant and my right to refuse to consent to a search." City Def. E. F. Had Ms. Krug signed these documents under penalty of perjury, the results on this motion might well have been different. See Hayes v. New York City Department of Corrections, 84 F.3d 614, 619 (2d Cir.1996)("A party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous [sworn] testimony.").

failed to submit sufficient affidavits upon which the Court can adequately address their qualified immunity defense.[19]  Their motions in this regard are denied with leave to renew following completion of discovery.  For reasons stated above, the claim is dismissed as against the County of Rensselaer but remains viable against the City of Troy on a failure to train or supervise theory.

As to the separate claims based upon the contention that the "Permission to Search Premises" forms were ambiguous or did not contractually allow certain officers to search the residences or seize property, the claims are dismissed.  Apart from whether Bonnie Krug freely, knowingly, and voluntarily waived her right under the Fourth Amendment in executing the documents, there is no justiciable Section 1983 claim arising from the language of the forms. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)(To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.).  Further, Plaintiffs have not asserted a viable breach of contract claim in their Amended Complaint, and the Court finds no cognizable state law claim arising from the contents of the forms.[20]  Any claim premised upon the content of the forms is dismissed.

---

[19]Defendants argue simply that they are entitled to qualified immunity without providing a factual or legal basis addressed to the claim at hand that would entitle them to the defense.

[20]The forms allowed the police to "conduct a complete search of the premises" and authorized them "to take from my premises any letter, papers, materials, or other property which they may require."  City Def. Ex. F.

**2.      Search of Van on Residential Properties**

Defendant Hess searched through one of the vans on Plaintiffs' residential

properties on June 7, 2001.  Plaintiffs contend that the search violated their Fourth

Amendment rights and that Hess and the other defendants are liable on theories of actual

participation, failure to intervene in the unconstitutional acts of another, or conspiracy.

Defendants argue that they were not involved in the van search, had no knowledge of it, or

are entitled to qualified immunity.  Defendants have failed to provide sufficient affidavits

setting forth the factual basis of their claims for qualified immunity such that the Court can

properly determine this affirmative defense.  Their motions are denied with leave to renew

following completion of discovery.

There is no basis to hold the County of Rensselaer responsible on this claim, and

there is no basis upon which a reasonable fact finder could conclude that Defendants

Schoonmaker, Mahar and Kaiser had any personal involvement in the van searches.

Accordingly, the motion for summary judgment on the claims arising from the van

searches is denied with leave to renew as against Defendants Waters, Hess, Buchanan,

Cieplik, and the City of Troy.

**3.      1989 Oldsmobile**

Plaintiffs contend that their Fourth Amendment rights were violated because the

1989 Oldsmobile, although the subject of a search warrant issued on June 13, 2001, was

illegally impounded by the police on June 12, 2001.  There is no indication which

defendants, if any, were involved in impounding the vehicle,[21] whether the action was

_____

[21]Although it is unlikely that Plaintiffs will establish personal involvement by Defendants Jack Mahar

(continued...)

25

justified, or whether the defendants have the basis of a qualified immunity defense to such action. While there exists no viable claim for the search of the vehicle in light of the uncontested fact that the search occurred pursuant to a valid warrant, and while there exists no basis to hold the County of Rensselaer responsible on this claim, the motion for summary judgment on the claims arising from the purported seizure of the 1989 Oldsmobile must be denied. Accordingly, the motion is granted as to the County of Rensselaer and denied in all other respects with leave to renew.

### 4.    Rented Pick-Up Truck

Plaintiffs contend that a pick-up truck rented by Robert Krug was "seized without a warrant outside of the City of Troy Police Department's jurisdiction," towed to Rensselaer County, and searched. Am. Compl. ¶ 17. It is unclear when this occurred, by whom it occurred, or whether the involved defendants have the basis of a qualified immunity defense in this regard. Thus, the motion for summary judgment on the claims arising from the purported seizure of the rented pick-up truck is denied with leave to renew. The motion is granted as to the County of Rensselaer because there exists no basis to hold it responsible on this claim.

### f.    Right to Counsel

_____The Amended Complaint asserts a Sixth Amendment claim, although it is not clear which Plaintiff asserts the claim. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Texas v. Cobb, 532 U.S. 162, 167, 121 S. Ct.

---

[21](...continued)
and Nicholas Kaiser, Plaintiffs contend that further discovery may yield such evidence.

1335, 149 L. Ed.2d 321 (2001).  An individual's Sixth Amendment right to counsel

attaches "only at or after the time that adversary judicial proceedings have been initiated

against him." Kirby v. Illinois, 406 U.S. 682, 688, 92 S. Ct. 1877, 32 L. Ed.2d 411 (1972).

Under New York law, "a criminal proceeding, and the right to counsel, is initiated or

commenced by the *filing of an accusatory instrument.*" Brown v. Martin, 2004 WL

1774328, at * 5 (W.D.N.Y. Aug. 6, 2004)(emphasis in original)(citing People v. Blake, 35

N.Y.2d 331, 339, 361 N. Y. S.2d 881, 320 N. E.2d 625 (1974); Deshawn E. by Charlotte E.

v. Safir, 156 F.3d 340, 349 (2d Cir. 1998)).  "Since plaintiff [Bonnie Krug] had not been

arrested or charged with any crime at the time of questioning, her Sixth Amendment right

had yet to attach." Contes v. City of New York, 1999 WL 500140, at * 8 (S.D.N.Y. July 14,

1999) (citing Neighbour v. Covert, 68 F.3d 1508, 1511 (2d Cir.1995)).  Bonnie Krug has no

cognizable claim that her Sixth Amendment right to counsel was violated.  Since Robert

Krug was appointed an attorney before the filing of an accusatory instrument, he has no

cognizable Sixth Amendment claim.  Thus, any such claims are dismissed.

### g.    Fifth Amendment

_____The Amended Complaint asserts a violation of the Fifth Amendment.

The Fifth Amendment provides that no person "shall be compelled in any
criminal case to be a witness against himself."  U.S. Const. Amend. V. "It can
be asserted in any proceeding, civil or criminal, administrative or judicial,
investigatory or adjudicatory;  and it protects against any disclosures which
the witness reasonably believes could be used in a criminal prosecution or
could lead to other evidence that might be so used." Kastigar v. United
States, 406 U.S. 441, 444-45, 92 S. Ct. 1653, 32 L. Ed.2d 212 (1972)
(footnotes omitted).  In Kastigar, the Supreme Court declared that the
Amendment's "sole concern is to afford protection against being forced to
give testimony leading to the infliction of [criminal] penalties."  Id. at 453, 92
S. Ct. 1653 (internal quotation marks and citation omitted).   The Fifth
Amendment's self-incrimination clause bars the government from using a

compelled confession in any criminal case.

Higazy v. Templeton, 505 F.3d 161, 170 (2d Cir. 2007).

Inasmuch as Bonnie Krug's statements were never used against her in a criminal proceeding, she has no claim under the Fifth Amendment's self-incrimination clause. See Chavez v. Martinez, 538 U.S. 760, 766 (2003)(holding that a coerced confession cannot serve as the basis for a 42 U.S.C. § 1983 action when that confession was never used in a criminal case); Weaver v. Brenner, 40 F.3d 527, 536  (2d Cir. 1994)(use of a coerced confession from a defendant before a grand jury is a violation of the self-incrimination clause).

Robert Krug has had a full and fair opportunity to litigate the constitutionality of the State's use of his post-arrest statements in his criminal proceeding.  That issue was necessarily decided in and material to the criminal action, and is identical to any such claim raised now under the Fifth Amendment.  Thus, any claim in this regard by Robert Krug is barred by the doctrine of collateral estoppel.  All Fifth Amendment claims are dismissed.

**h.    Due Process**

**1.    Lack of Notice of Grand Jury Proceedings**

Robert Krug contends that he was denied due process because he was not advised of the presentation of evidence before the Grand Jury.  There is no dispute that his attorney was so advised. See Pl. Resp. to County's Mot., p. 4 ("[P]laintiffs concede that defense counsel was advised").  Notice to his attorney is legally sufficient, see N.Y. C.P.L. § 190.50(5)(a), People v. Sawyer, 96 N.Y.2d 815, 816-17 (2001), and provides sufficient

notice within the meaning of the due process clause. Bonnie Krug lacks standing to present a similar claim. Thus, all claims in this regard are dismissed.

### 2.      Grand Jury Determination based on inadequate evidence

Next, Robert Krug contends that his due process rights were violated because the Grand Jury's determination was based upon inadequate evidence.  This claim is barred by the doctrine of collateral estoppel in that the identical issue was determined adversely to Krug in the criminal proceeding during which he had a full and fair opportunity to litigate the matter.   Bonnie Krug lacks standing to present a similar claim.  Accordingly, any claim in this regard is dismissed.

### 3.      Presentation of False Evidence Before the Grand Jury

Robert Krug also contends that his due process rights were violated because Officer Schoonmaker testified falsely before the grand jury.  While the claim is based upon mere surmise and speculation,[22] it can be interpreted as a contention that the entire Grand Jury proceeding was defective and, thus, so too is his indictment.  The claim is barred by Heck and Covington because it necessarily implies the invalidity of the any future conviction.  Accordingly, the claim is dismissed.

### i.      Troy City Police Department

A city police department is not an independent, suable entity separate from the municipality in which the police department is organized.  See Orraca v. City of N.Y., 897 F. Supp. 148 (S.D.N.Y. 1995)(police department and police precinct are not suable entities

---

[22]Although Krug offers the transcript of a limited  portion of the Grand Jury proceeding, he does not provide Schoonmaker's testimony before the grand jury or identify what is that Schoonmaker purportedly testified falsely about. He contends, however, that if he was provided further discovery he might be able to establish the basis of his claim.

separate from the City); Wilson v. City of N.Y., 800 F. Supp. 1098, 1101 (E.D.N.Y.

1992)(police department "cannot be sued independently because it is an agency of the

City of New York"), aff'd, 32 F.3d 989 (2nd Cir. 1994).  Thus, inasmuch as the City of Troy

is named as a defendant, the City of Troy Police Department is dismissed from this action.

> **j.      State Constitutional Claims**

Plaintiffs broadly assert violations of their rights under various clauses of the New

York State Constitution.  See Am. Compl. p. 1.  These claims are based upon the same

factual allegations as set forth with regard to their Section 1983 claims.   Plaintiffs do not

identify how their state constitutional claims differ from their Section 1983 claims, or

support the conclusion that the various Articles of the New York State Constitution cited in

the Amended Complaint allow for a private right of action.   "[V]arious federal courts in this

circuit have held that 'there is no private right of action under the New York State

Constitution where . . . remedies are available under § 1983." Clayton v. City of

Poughkeepsie, 2007 WL 2154196, at * 7 (June 21, 2007)(quoting Devito v. Barrant, No.

03-CV-1927 (DLI)(RLM), 2005 U.S. Dist. LEXIS 22444, *24 (E.D.N.Y. Aug. 23, 2005) in

turn citing Flores v. City of Mount Vernon, 41 F.Supp.2d 439, 446-47 (S.D.N.Y. 1999)).

Because all state constitutional law claims are also asserted as Section 1983 claims, all

such claims are dismissed. Id.

> **k.      Equitable Relief**

In the Amended Complaint, Plaintiffs seek a declaration that

> [t]he False Arrest, Unlawful Search and Seizure of Property and Unlawful
> Violation of the Guaranty [*sic*] against Self-Incrimination, lack of due process,
> not being informed of any charges, lack of counsel, restriction of speech,
> equal protection and conspiracy of the plaintiffs Mr. & Mrs. Krug [*sic*] violated

> the plaintiffs' rights under the United State Constitution . . . the Americans
> with Disabilities Act . . . [and New York State law].

Am. Compl. p. 24.   Plaintiffs also seek an injunction "ordering the defendants to institute

misconduct proceedings against the individual defendants who were found to have

violated plaintiffs' civil rights . . . ."  Id.  In their opposition papers, Plaintiffs argue for a

"stay of the state proceedings." Pl. Opp. to Ren. County Mot., p. 21.

Any such equitable claims must be dismissed to the extent that they are based

upon claims for purported constitutional violations that have been dismissed from this

case.  Further, the Court's authority to exercise jurisdiction over those portions of Robert

Krug's demands for equitable relief remaining in the case is clearly prohibited in light of the

Younger abstention doctrine. See Younger v. Harris, 401 U.S. 37 (1971); Kirschner v.

Klemons, 225 F.3d 227, 235 (2d Cir. 2000)("The Younger doctrine is as applicable to suits

for declaratory relief as it is to those for injunctive relief;  the Supreme Court held in a

companion case to Younger that Younger's policy would "be frustrated as much by a

declaratory judgment as it would be by an injunction." Samuels v. Mackell, 401 U.S. 66,

73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).").

> As the Supreme Court emphasized in Younger v. Harris, 401 U.S. 37, 43-45,
> 91 S.Ct. 746 (1971), federal courts should generally refrain from enjoining or
> otherwise interfering in ongoing state proceedings.  This principle of
> abstention is grounded in interrelated principles of comity and federalism.
> See Schlagler v. Phillips, 166 F.3d 439, 442 (2d Cir.1999). Both
> considerations require federal courts to be "cognizant that 'the National
> Government will fare best if the States and their institutions are left free to
> perform their separate functions in their separate ways.'" Younger, 401 U.S.
> at 44.  "Our Federalism" in its ideal form, as the Supreme Court explained in
> Younger, strives towards "a system in which there is sensitivity to the
> legitimate interests of both State and National Governments, and in which
> the National Government, anxious though it may be to vindicate and protect
> federal rights and federal interests, always endeavors to do so in ways that
> will not unduly interfere with the legitimate activities of the States." Id. . . .

31

> Giving states "the first opportunity ... to correct their own mistakes" when
> there is an ongoing state proceeding serves the vital purpose of "reaffirm[ing]
> the competence of the state courts," and acknowledging the dignity of states
> as co-equal sovereigns in our federal system. Id. at 200.

Spargo v. New York State Com'n on Judicial Conduct, 351 F.3d 65, 74-75 (2d Cir. 2003).

"Younger abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." Spargo 351 F.3d at 75. All three of the Younger factors are present here.

First, there is a pending state proceeding - Robert Krug's criminal prosecution. While some of the issues raised in this case have already been adjudicated in his first criminal prosecution, they may potentially be raised anew in the pending matter. A declaration on any of the remaining issues would clearly interfere with the on-going state proceedings. Second, the underlying state proceeding implicates an important state interest, namely, the prosecution of a serious felony in the State of New York. Third, the state proceeding affords Krug an adequate opportunity for judicial review of his remaining federal constitutional claims. Further, there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate. See Kirschner, 225 F.3d at 233-34.[23] Accordingly, the Court abstains under Younger from

---

[23]     [T]he Supreme Court has explained that "[t]he policies underlying Younger
         are fully applicable to noncriminal judicial proceedings when important state
         interests are involved." Middlesex County Ethics Comm. v. Garden State
         Bar Ass'n., 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed.2d 116 (1982).
         Therefore, "unless state law clearly bars the interposition of the constitutional
         [or federal] claims," and "so long as there is no showing of bad faith,
         harassment, or some other extraordinary circumstance that would make

(continued...)

adjudicating Robert L. Krug's demands for equitable relief, including his demand to enjoin the state prosecution, and these claims are dismissed. <u>See</u> <u>id.</u> at 237 ("Since Kirschner has failed to show that an exception is applicable, <u>Younger</u> requires that we abstain from hearing Kirschner's claims for declaratory relief against [certain defendants].  The district court correctly dismissed these claims.").

Bonnie Krug has no standing to seek to enjoin the state criminal proceeding of her husband, and thus any such demand by her is rejected and dismissed.

## IV.   CONCLUSION

Defendants' motions for summary judgment, <u>see</u> dkt. # 98 (motion by the City of Troy and all individual defendants employed by the City of Troy; dkt. # 99 (motion by the County of Rensselaer); and (3) dkt. # 101 (motion Defendant Chirstopher Cieplik), are **GRANTED IN PART AND DENIED IN PART**.

In this regard, the motions are **GRANTED** and all claims are dismissed **EXCEPT**:

(1)   Bonnie Krug's false arrest claims against Defendants Waters, Kaiser, Mahar, Buchanan, Cieplik, and the City of Troy;

(2)   Bonnie Krug's Fourth Amendment search claims against Defendants Waters, Kaiser, Mahar, Buchanan, Cieplik and the City of Troy alleging that her two residential properties in New Baltimore, New York were illegally searched;

(3)   Robert and Bonnie Krug's Fourth Amendment search claims against Defendants Waters, Hess, Buchanan, Cieplik, and the City of Troy alleging

---

[23](...continued)

abstention inappropriate, the federal courts should abstain."  <u>Id.</u> at 432, 435, 102 S. Ct. 2515 (internal quotation marks and citation omitted).  <u>Younger</u> itself explained that exceptions to abstention should be made only on a "showing of bad faith, harassment, or ... other unusual circumstance."  <u>Younger</u>, 401 U.S. at 54, 91 S. Ct. 746.

<u>Kirschner</u>, 225 F.3d at 233-34.

an illegal search of a van on their residential properties in New Baltimore, New York;

(4)     Robert and Bonnie Krug's Fourth Amendment seizure claims against Defendants Waters, Kaiser, Mahar, Buchanan, Schoonmaker, Cieplik, and the City of Troy alleging that a 1989 Oldsmobile was illegally seized (any claim arising from the search of this vehicle is dismissed);

(5)     Robert and Bonnie Krug's Fourth Amendment search and seizure claims against Defendants Waters, Kaiser, Mahar, Buchanan, Schoonmaker, Cieplik, and the City of Troy alleging that a rented pick-up truck was illegally seized and searched;

(6)     Bonnie Krug's demands for equitable relief relative to her remaining § 1983 claims.

Defendants County of Rennselaer and the City of Troy Police Department are

**DISMISSED** from this action.

Plaintiffs' application to stay the state criminal proceeding of Robert L. Krug is

**DENIED**.

The parties are **GRANTED LEAVE** to file additional motions for summary judgment following the completion of discovery.  On all future matters in this case, and inasmuch as one *pro se* party cannot represent another, Robert Krug and Bonnie Krug shall be treated as if separately represented parties.  That is, each Plaintiff shall be served with, and shall serve, a separate Memorandum of Law (addressing *only* the claims particular to that party) and a separate Local Rule 7.1(a)(3) Statement (pertinent *only* to the claims particular to that party).  To preserve resources, the parties may submit and refer to joint factual appendices, but in all future matters the parties **shall** paginate their factual appendices and shall refer **specifically** to those portions thereof that supports or defeats a party's position.

34

**IT IS SO ORDERED**.

DATED: March 31, 2008

Thomas J. McAvoy
Senior, U.S. District Judge