UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT L. KRUG and BONNIE S. KRUG,

                                                      **Plaintiffs,**

    **-against-**                                                1:04-CV-0640
                                                                   (TJM/DRH)

**THE COUNTY OF RENNSELAER;
THE CITY OF TROY; NICHOLAS KAISER, Police
Chief; JACK MAHAR, Captain; JOHN WATERS,
Sergeant; RICHARD SCHOONMAKER, Police
Officer; LEE F. HESS, Police Officer;
CHRISTOPHER CIEPLIK, FBI Special Agent,
Individually and in their official capacities,**

                                                       **Defendants.**

_____

**THOMAS J. McAVOY,
Senior United States District Judge**


**DECISION & ORDER**

**I.  INTRODUCTION**

      Plaintiffs Robert L. and Bonnie S. Krug commenced this action *pro se* on June 4, 2004 asserting thirty-five (35) causes of action contending that their rights secured by the United States Constitution were violated.  The claims arise from circumstances surrounding Plaintiff Robert L. Krug's arrest and prosecution for attempted armed robbery.  See generally Compl. [dkt. # 1].  Through various amendments to the Complaint, Plaintiffs added over fifteen additional causes of action.  See 1st Am. Compl. [dkt. # 4]; 2nd Am. Compl. [dkt. # 40] ("Am. Compl.").  After numerous and lengthy adjournments occasioned

1

by Robert Krug's medical difficulties, the Court addressed Defendants' motion for summary judgment which resulted in many of the claims and the County of Rennselaer being dismissed from the action. See March 31, 2008 Decision & Order, dkt. # 148 reported at Krug v. County of Rennselaer, 559 F. Supp.2d 223 (N.D.N.Y. 2008). Defendant Chirstopher Cieplik has also been dismissed from the action by Stipulation and Order. See, Stip & Ord, dkt. # 199.

Now before the Court is Defendants' second summary judgment motion seeking to dismiss the remaining claims in this action. See Motion dkt. # 194. Plaintiffs, who are now represented by counsel, have opposed the motion. See Opp. dkt. # 201.

## II.   STANDARD OF REVIEW

The Court will apply the well-settled standard for resolving Rule 56 motions as set forth in the prior Decision and Order in this matter. See Krug, 559 F. Supp.2d at 233-35.

## III.   BACKGROUND

The Court assumes familiarity with the factual background of this case as set forth in the March 31, 2008 Decision and Order in this matter. See Krug, 559 F. Supp.2d at 235-38. Only the facts pertinent to the pending motion will be discussed below.

After the March 31, 2008 Decision and Order, the following claims survived and are the subject of the instant motion:

(1)   Bonnie Krug's false arrest claims;

(2)   Bonnie Krug's Fourth Amendment search claims alleging that her two residential properties in New Baltimore, New York were illegally searched;

(3)   Robert and Bonnie Krug's Fourth Amendment search claims alleging an illegal search of a van on their residential properties in New Baltimore, New York;

  (4) Robert and Bonnie Krug's Fourth Amendment seizure claims alleging that a 1989 Oldsmobile was illegally seized (any claim arising from the search of this vehicle was dismissed);

  (5) Robert and Bonnie Krug's Fourth Amendment search and seizure claims alleging that a rented pick-up truck was illegally seized and searched;

  (6) Bonnie Krug's demands for equitable relief relative to her remaining § 1983 claims.

## IV. DISCUSSION

### a. Bonnie Krug's false arrest claims

On the morning of June 7, 2001, Bonnie Krug went to the Troy City Court where her husband was arraigned on charges that he attempted to rob the HSBC Bank on Second Avenue in Troy, New York on June 6, 2001. She brought with her, and gave to the police, a letter written by her husband that she found at their residence. The letter was a copy, or draft, of the note given to the manager of the HSBC Bank during the attempted robbery. Once at the Troy Police Station, Bonnie Krug contends that she was detained for several hours and interrogated about her and her husband's connection to the attempted robbery by Sergeant John J. Waters of the Troy Police Department. She attests that during the interrogation, Sergeant Waters took and kept possession of her driver's license; kept the door to the interrogation room closed; repeatedly told her she could not leave; and escorted her to and from the rest room. Under the circumstances, a jury could find that Bonnie Krug was detained within the meaning to the Fourth Amendment and New York common law. See County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998)(A Fourth Amendment seizure occurs whenever an individual is physically or constructively detained by a police officer in such a manner that a reasonable person would not feel he is free to

3

leave.); Broughton v. State of New York, 37 N.Y.2d 451, 456 (1975); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).  Defendants' motion to dismiss the false arrest claim is denied as to Defendant Waters.   Further, and assuming that the facts were as Bonnie Krug attests, reasonable officers would not disagree whether Defendant Waters had probable cause or other justification to detain Bonnie Krug.  Accordingly, Defendant Waters is not entitled to qualified immunity on this claim.

Plaintiffs have not, however, provided sufficient evidence from which a reasonable fact finder could conclude that any other individual Defendant took action to detain Bonnie Krug against her will, acquiesced in an apparent false arrest taking place in their presence, or supervised another officer in the apparent violation of a citizen's rights.   Accordingly, the false arrest claims against the other individual Defendants are dismissed.

Further, Plaintiffs have failed to present sufficient evidence from which a reasonable fact finder could conclude that the City of Troy had an unconstitutional policy of failing to properly train or supervise its officers in conducting interviews of witnesses in criminal matters.  Plaintiffs have merely alleged that the "failure to train" Troy City Police Officers resulted in the deprivation of Bonnie Krug's constitutional rights on June 7, 2001.  However, Plaintiffs have failed to provide sufficient evidence from which a reasonable fact finder could conclude the City of Troy was deliberately indifferent to the constitutional rights of witnesses in criminal matters.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989)(The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to "deliberate indifference" to the rights of those with whom the city employees interact.); Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir.1992)(To establish "deliberate indifference," a plaintiff must show that: [i] a policymaker

4

knows "to a moral certainty" that city employees will confront a particular situation; [ii] the situation either presents the employee with "a difficult choice of the sort that training or supervision will make less difficult" or "there is a history of employees mishandling the situation;" and [3] "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."). The single incident alleged in this matter is, in this case, insufficient to demonstrate the existence a municipal policy. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 123 (2d Cir. 1997)("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.")(citations omitted). Accordingly, the Monell claim in this regard is dismissed. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); Wray v. City of New York, 490 F.3d 189, 195-96 (2d Cir. 2007).

### b.    **Bonnie Krug's Illegal Search Claims - Residential Properties**

Bonnie Krug asserts that, while she was being interrogated and while she was in extreme emotional distress, Sergeant Waters handed her a "Permission to Search Form" which he stated was a "warrant." He then purportedly made statements that led her to believe that if she did not sign the form, she would be implicated in the bank robbery and formally arrested. According to Bonnie Krug, Waters told her to sign the document without reading it and that he would explain the contents to her, but he never did explain the contents. She asserts that she signed the document but that her consent was not freely and knowingly given. Bonnie Krug was then transported with Sergeant Waters to her residence in New Baltimore, New York and remained there while Waters, Officer Hess and Officer Buchanan searched through the residence.

5

Assuming the facts asserted by Bonnie Krug to be true, a reasonable fact finder could conclude that her consent to search her residence was not freely and voluntarily given and that Sergeant Waters searched the residence knowing that what he was doing was in violation of Bonnie Krug's Fourth Amendment rights.  However, there is insufficient evidence from which a reasonable fact finder could that the other individual Defendants took any action to secure the consent form, or that they were aware of facts from which a reasonable officer would conclude that Bonnie Krug did not freely and voluntarily sign the consent form.  Bonnie Krug's surmise as to what Officers Hess and Buchanan might have known about the consent form, or her belief that the Officers should have concluded that she did not actually "consent" because she looked worried during the search, are insufficient to withstand these officers' motion for summary judgment.  Officers Hess and Buchanan acted constitutionally when searching the premises pursuant to what appeared to be a voluntary consent given by the property owner.  See Georgia v. Randolph, 547 U.S. 103, 109 (2006)("To the Fourth Amendment rule ordinarily prohibiting the warrantless entry of a person's house as unreasonable *per se*, one jealously and carefully drawn exception recognizes the validity of searches with the voluntary consent of an individual possessing authority.") (interior quotation marks and citations omitted); United States v. Matlock, 415 U.S. 164, 165-66 (1974).  Accordingly, the Fourth Amendment search claim relative to Plaintiffs' residence is dismissed against all individual Defendants except Defendant Waters.

Bonnie Krug further asserts that once it was discovered that the Krugs had another residential property in New Baltimore, Sergeant Waters presented her with another "Permission to Search Form" which she felt compelled to sign.  A reasonable fact finder

6

could conclude that, at the time she signed the consent to search the second property, Bonnie Krug believed she was still in custody and laboring under the belief that if she did not sign the consent form she would be prosecuted for her husband's crime. Accordingly, a reasonable fact finder could find that her consent to search the second residence was not freely and voluntarily given and that Sergeant Waters, aware of this fact, searched the second property nonetheless. However, like with the first consent form, Plaintiffs have failed to provide sufficient facts from which a reasonable fact finder could conclude that the other individual Defendants were aware that Bonnie Krug's consent was not freely and voluntarily given. Accordingly, the illegal search claim for the second residence is dismissed as to all individual Defendants except Defendant Waters.

For the reason discussed above as to the Monell claim premised upon the alleged false arrest, any Monell claim premised upon the searches of Plaintiffs' residential properties is dismissed.

### c.   Search of Van

At the Plaintiffs' New Baltimore residence, the police observed four vans in the driveway. Bonnie Krug advised the police that the vans belonged to Robert Krug. When asked, Bonnie Krug provided the keys to one of the vans to Officer Hess and Hess then searched through the van. There is no dispute that the van that was searched was owned by Robert Krug. See Pl. MOL, p. 16. Bonnie Krug has not provided facts from which a reasonable fact finder could conclude that she had a reasonable expectation of privacy in the van or any packages in the van. Accordingly, she lacks standing to assert a claim alleging a Fourth Amendment violation arising from the search of the van. Rakas v. Illinois, 439 U.S. 128, 148-49(1978); United States v. Paulino, 850 F.2d 93, 97 (2d Cir.1988), cert.

denied, 490 U.S. 1052 (1989); see also United States v. Shefler, 2009 WL 102819, at * 3 (N.D.N.Y. Jan. 13 2009)("It is clear from established case law that while a passenger in a vehicle has the right to make a Fourth Amendment challenge to a stop of the vehicle, he generally has no standing to challenge a search of the vehicle unless he can establish a specific expectation of privacy."); United States v. Sykes, 2006 WL 2711460, at *3 (W.D.N.Y. Sept. 20, 2006)(defendant lacked standing to challenge search of vehicles parked on property searched pursuant to warrant because defendant failed to establish that he had a reasonable expectation of privacy in the vehicles).

Further, and assuming *arguendo* that Officer Hess violated either Plaintiff's Fourth Amendment rights by the search of the van, he is entitled to qualified immunity for two reasons.  First, Officer Hess reasonably believed that Bonnie Krug's signed consents to search the New Baltimore residential properties provided him the authority to search the vehicles parked on the property.  Although the New York criminal court in Robert Krug's criminal matter ruled that this was not the case (and suppressed the evidence obtained from the van), reasonable officers could disagree whether the consent to search the property provided authority to search the vehicles located on the property. See LaFave, SEARCH AND SEIZURE, 3RD ED.  Vol. 2, Sec. 4.10(c), p. 667 ("It has often been held that a search warrant authorizing the search of certain premises covers automobiles found on these premises."); United States v. Walker, 922 F. Supp. 732, 775 (N.D.N.Y. 1996)("The court holds that the search did not exceed the scope of the warrant because it was reasonable under the circumstances to conclude that the object of the search . . . may have been found in the automobile parked in the rear area of the driveway of the apartment."); United States v. Singer, 970 F.2d 1414, 1417-18 (5th Cir. 1992)("This court

has consistently held that a warrant authorizing a search of 'the premises' includes vehicles parked on the premises."); United States v. Gottschalk, 915 F.2d 1459, 1461 (10th Cir. 1990)(warrant for premises "generally includes any vehicles located within its curtilage"); United States v. Percival, 756 F.2d 600, 612 (7th Cir. 1985)("search warrant authorizing a search of a particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises"); United States v. Bulgatz, 693 F.2d 728, 730 n. 3 (8th Cir. 1982)(warrant for house authorized search of car parked in attached garage), cert. denied, 459 U.S. 1210 (1983); United States v. Freeman, 685 F.2d 942, 955 (5th Cir. 1982)(search warrant for residence justified search of vehicle located on premises); Sykes, 2006 WL 2711460, at *3 ("the search of the automobiles was within the scope of the warrant that authorized a search of the premises 'to include all its storage areas and curtilage.").

Second, Bonnie Krug consented to the search of the van by providing Officer Hess with the keys to it. Although she now contends that she felt coerced to provide the key for the same reason that she felt coerced to sign the property search consents, none of the events leading to her feelings of "coercion" occurred in Officer Hess's presence. There was insufficient evidence for Officer Hess to doubt that Bonnie Krug freely and voluntarily consented to the search of the vehicle. In addition, by virtue of the fact that she possessed the keys to her husband's van, it was objectively reasonable for Officer Hess to conclude that she had apparent authority over the van. See United States v. Snype, 441 F.3d 119, 136 (2d Cir. 2006)("The law in this circuit is well settled that a third party's consent will validate a search of places or items in which another maintains a privacy interest if two conditions are satisfied: the third party had (1) 'access to the area searched,'

and (2) either '(a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access [to the area].'")(quoting Ehrlich v. Town of Glastonbury, 348 F.3d 48, 53 (2d Cir .2003)); see also Moore v. Andreno, 505 F.3d 203, 209 (2d Cir. 2007)(even if a third party "lacks actual authority to consent to a search of a particular area, he still may have apparent authority to consent to the search."); Illinois v. Rodriguez, 497 U.S. 177, 188 (1990)(Apparent authority to give consent "must be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?")(quoting Terry v. Ohio, 392 U.S. 1, 21-22(1968)). Thus, based upon these facts, Officer Hess is entitled to qualified immunity for the search of the van because it was objectively reasonable for him conclude that the search was constitutionally permitted because it had been consented to by a person having apparent authority over the vehicle. See Koch v. Town of Brattleboro, 287 F.3d 162, 167 (2d Cir. 2002) ("A search conducted pursuant to consent by an authorized third party does not require probable cause or a warrant.").  The claims by both Plaintiffs against Officer Hess are dismissed.

Plaintiffs have failed to provide sufficient evidence that any other individual Defendant had personal involvement in the search of the van, and, therefore, the claims against all other individual Defendants are dismissed.  Plaintiffs have also failed to provide sufficient evidence of an unconstitutional policy by the City of Troy concerning the search or seizure of vehicles belonging to criminal suspects and, therefore, the Monell claims against the City of Troy are dismissed.

### d. Illegal Seizure of 1989 Oldsmobile

The police believed that Robert Krug rented a truck from the Budget Car Rental

10

agency to be used as a getaway vehicle after robbing the HSBC Bank on Second Avenue in Troy.  Because Robert Krug was apprehended as he ran from the Bank, he was unable to escape using the rented truck. Shortly after the bank robbery attempt, Robert Krug's 1989 Oldsmobile was found parked at the Budget Car Rental agency near the Albany International Airport.  The police impounded the vehicle and towed it to the Troy Police Garage and then requested, and received, a warrant to search the vehicle.  See Pl. Ex. M. Claims regarding the search of the vehicle were previously dismissed by the Court. Plaintiffs assert Fourth Amendment illegal seizure claims regarding the pre-warrant seizure of the vehicle.

There is no dispute that Robert Krug owned the 1989 Oldsmobile.  For reasons discussed above with regard the search of the van, Bonnie Krug lacks standing to assert a Fourth Amendment illegal seizure claim with regard to the 1989 Oldsmobile.  Further, she has not demonstrated that she suffered any damage by the police action of impounding her husband's car.  Her claim in this regard is dismissed.

The circumstances surrounding the location of the 1989 Oldsmobile, as well as its contents, were evidence in Robert Krug's prosecution.  On September 22, 2009, Robert Krug pleaded guilty to attempted robbery in the third degree, attempted robbery in the first degree, and criminal possession of a weapon in the third degree arising from the attempted robbery of the HSBC Bank on Second Avenue in Troy on June 6, 2001.  Any claim by Robert Krug alleging that the police obtained evidence by means of actions that violated his constitutional rights would imply the invalidity of his state court criminal convictions.  Plaintiff has not proven that his convictions have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to

11

make such determination, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Accordingly, his illegal seizure claim relative to the seizure of his 1989 Oldsmobile is dismissed under the holding of Heck v. Humphrey, 512 U.S. 477 (1994).[1]

### e. Illegal Search and Seizure of Rented Pickup Truck

Plaintiffs also assert Fourth Amendment illegal search and seizure claims relative to the pickup truck that Robert Krug rented from the Budget Car Rental agency shortly before the attempted bank robbery. See Pl. Ex. O (Budget Car Rental agency rental receipt). The vehicle was found in Cohoes, New York and had in it a package that resembled a bomb.[2] The New York State Police Bomb Squad discovered that the package consisted of three road flares with an attached timer. The vehicle was then impounded, towed to the Troy Police garage, and searched. Plaintiffs have failed to provide sufficient evidence establishing which individual Defendants, if any, were responsible for impounding the vehicle or searching it. The claims may be dismissed on this basis alone.

Further, and for reasons discussed above, Bonnie Krug lacks standing to assert a Fourth Amendment illegal search and seizure claim with regard to the rented pickup truck.

---

[1] In Heck, the Supreme Court held that

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. 486-87 (footnote omitted)(emphasis added).

[2] The letter provided to the bank teller indicated that Krug had a bomb that could be detonated by remote control.

12

In addition, she has not demonstrated that she suffered any damage by the police action of impounding or searching the pickup truck rented by her husband. Accordingly, her claims in this regard are dismissed.

Evidence obtained from the rented pickup truck was used in the prosecution of Robert Krug. Because his claims asserting the illegal search and seizure of the rented pickup truck rest on the proposition that the evidence against him in the criminal prosecution was obtained in violation of his constitutional rights, the claims imply the invalidity of his conviction. As indicated above, he has not proven that his convictions have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Accordingly, Robert Krug's illegal seizure claim relative to the search and seizure of his rented pickup truck is dismissed under the holding of Heck v. Humphrey, 512 U.S. 477 (1994).

## V.   CONCLUSION

Defendants' Motion for Summary Judgment [dkt. # 194] is **GRANTED IN PART and DENIED IN PART**. The motion is granted and all claims against all defendants are dismissed **except**:

-Bonnie Krug's state and federal law False Arrest claims against Defendant Waters;

-Bonnie Krug's state law False Arrest claim against the City of Troy (*respondent superior* liability theory);

-Bonnie Krug's federal law Illegal Search of her two New Baltimore, New York residential properties claim against Defendant Waters.

All other claims against all other defendants are **DISMISSED**, including all claims by Robert Krug.

**IT IS SO ORDERED**

DATED: October 5, 2010

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge