**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ROBERT L. KRUG and BONNIE S. KRUG,**

**Plaintiffs,**

**-against-** **1:04-CV-0640 (TJM/DRH)**

**THE CITY OF TROY, *et al.*,**

**Defendants.**

---

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

## I. INTRODUCTION

Presently before the Court are: (1) Plaintiff Robert L. Krug's motion for reconsideration of various decisions that dismissed his claims, see Recon. Mot., dkt. # 214; and (2) Plaintiff Bonnie S. Krug's motion for a judgment as a matter of law or, in the alternative, a new trial. See Post-Trial Mot., dkt. # 219. Defendants have opposed the motions, see Resp. in Opp. to Recon. Mot., dkt. # 220; Resp. in Opp. to Post-Trial Mot., dkt. # 221, and Bonnie Krug filed a reply. See Reply, dkt. # 225. For the reasons that follow, both motions are denied.

## II. BACKGROUND

The background of this case, up to the time of trial, was set forth in the Court's two

prior decisions on Defendants' motions for summary judgment. See March 31, 2008 Decision & Order, dkt. # 148 reported at Krug v. County of Rennselaer, 559 F. Supp.2d 223 (N.D.N.Y. 2008); October 5, 2010 Decision and Order, dkt. # 206, reported at Krug v. County of Rennselaer, Slip Copy, 2010 WL 3937319 (N.D.N.Y., Oct. 5, 2010). Familiarity with these decisions is presumed.

On October 13, 2010, a jury trial commenced on Plaintiff Bonnie S. Krug's remaining claims of false arrest and illegal searches of her property. On October 14, 2010, the jury returned a verdict in favor of the remaining defendants (Troy Police Sergeant John Waters and the City of Troy), finding no cause of action on any claim.

## III. STANDARDS OF REVIEW

### (a) Motion for Reconsideration

A motion for reconsideration is not a substitute for an appeal. "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Friedman v. S.U.N.Y. at Binghamton, 2006 WL 2882980, at * 1 (N.D.N.Y. Oct. 5, 2006). "The high burden imposed on the moving party has been established in order to dissuade repetitive arguments on issues that have already been considered by the court and discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court [and] to ensure finality and prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with

additional matters." Nowacki v. Closson, 2001 WL 175239, *1 (N.D.N.Y. Jan. 24, 2001) (Munson, J.) (internal citations and quotations omitted). Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998). Reargument is also not a vehicle to "advance new facts, issues or arguments not previously presented to the court." Polanco v. United States, 2000 WL 1346726, at *1 (S.D.N.Y. Sept.19, 2000) (quoting Schrader, 70 F.2d at 256). "The Northern District of New York 'recognizes only three possible grounds upon which a motion for reconsideration may be granted: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct clear error of law to prevent manifest injustice.'" Friedman, 2006 WL 2882980, at * 1 (quoting Nowacki, 2001 WL 175239, at *1).

Plaintiff's motion for reconsideration implicates both Rule 60(b) of the Federal Rules of Civil Procedure and Northern District of New York Local Rule 7.1(g).[1] Plaintiff does not

---

[1] Rule 60( b) addresses the standard to be applied when relief from a final judgment or order is sought, and provides in relevant part that:

> [o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60( b).

"Local Rule 7. 1( g), on the other hand, merely details a procedure to govern motions for reconsideration, without setting out an applicable standard for determining such applications." Chao v. Magnuson, 2008 WL 2433698, at *2, fn. 2 (N.D.N.Y. June 12, 2008)(Peebles, M.J.)(citing N.D.N .Y. L. R. 7. 1( g)).

assert which of the subsections of Rule 60(b) he proceeds under although his arguments appear to be made under either Rule 60(b)(1) or the catch-all provision of Rule 60(b)(6). A motion under Rule 60(b)(1) must be made within one year after the judgment. See Fed. R. Civ. P. 60(c)(1). A motion under Rule 60(b)(6) must be made within a reasonable time. See Fed. R. Civ. P. 60(c)(1). What is reasonable entails a balancing of the interest in finality with the reasons for the delay. Grace v. Bank Leumi Trust Co. of NY, 443 F.3d 180, 190 n.8 (2d Cir. 2006). "[A] Rule 60(b)(6) motion requires 'extraordinary circumstances,' which 'typically do not exist where the applicant fails to move for relief promptly.'" Id. (quoting 12 Moore's Federal Practice § 60.48[3][c] and Transaero, Inc. v. La Fuerza Area Boliviana, 24 F.3d 457, 462 (2d Cir. 1994)). Local Rule 7.1(g) provides that "[u]nless Fed. R. Civ. P. 60 otherwise governs, a party may file and serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order, or decree." N.D.N.Y.L.R. 7.1(g)(emphasis in original).

**(b) Motion for Judgment As a Matter of Law (JMOL)**

"In this Circuit, a party seeking to vacate a jury verdict and enter judgment as a matter of law carries a 'heavy burden.'" Tesser v. Board of Educ. of City School Dist. of City of New York, 190 F. Supp.2d 430, 436 (E.D.N.Y. 2002)(citing Burke v. Spartanics Ltd., 252 F.3d 131, 136 (2d Cir. 2001); Ryduchowski v. Port Authority of New York and New Jersey, 203 F.3d 135, 142 (2d Cir. 2000)). "A motion for [JMOL] pursuant to FED. R. CIV. P. 50, may not properly be granted unless: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in

favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." Myers v. County of Orange, 157 F.3d 66, 73 (2d Cir. 1998)(internal quotations and citation omitted), cert. denied, 525 U.S. 1146 (1999).

"In ruling on a motion for JMOL, the trial court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001) (citation omitted). In reviewing the evidence, the Court should consider everything in the record, however, "it *must disregard all evidence favorable to the moving party that the jury is not required to believe*. . . . That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. (citation omitted)(emphasis in original).

**(c) Motion for New Trial**

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Second Circuit has interpreted this standard to permit the granting of new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 133

(2d Cir. 1998)(quotation marks and citation omitted); see Tesser v. Board of Educ. of City School Dist. of City of New York, 190 F. Supp.2d 430, 440 (E.D.N.Y. 2002). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." DLC Management Corp., 163 F.3d at 133.

"Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner. A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is egregious." Id. (internal citations and quotations omitted). "[A] court should rarely disturb a jury's evaluation of a witness's credibility." Id. (internal citations and quotations omitted). Therefore, "[w]here the resolution of the issues depend[s] on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir.1992).

## IV. DISCUSSION

### (a) Motion for Reconsideration

Plaintiff Robert Krug asserts in his motion for reconsideration that the Court erred in dismissing some of his Fourth Amendment illegal search and seizure claims because: (1) the Court might have been unaware that there were multiple vans on his residential property; (2) the Court might have been unaware that a briefcase found at his property was searched; (3) the Court overlooked Plaintiff's claim that his 1989 Oldsmobile was seized and potentially searched; and (4) the Court misapplied the rule of Heck v.

Humphrey, 512 U.S. 477 (1994).

The first three arguments are patently frivolous as demonstrated by the March 31, 2008 Decision & Order at pages 10-11,[2] 11,[3] 25,[4] and 25-26,[5] and the October 5, 2010 Decision and Order at pages 7-10[6] and 10-12.[7] Further, the Court concluded, based on the evidence presented on the first summary judgment motion, that Robert Krug failed to establish Fourth Amendment violations relative to: (1) the briefcase because it was searched pursuant to a judicial warrant; (2) the search of the 1989 Oldsmobile because, if

---

[2](setting forth undisputed facts – "While at the second property, Officer Hess asked [Bonnie] Krug for permission to search two vans on the property. City Def. Ex. F, p. 118. Krug gave him the keys to one van and he searched it, but she could not find a key to the second van so it was not searched. Id.")

[3](setting forth undisputed facts - "On June 13, 2001, the Troy City Court, Trial Part issued a search warrant pursuant to New York Criminal Procedure Law ("CPL") § 690.50 which authorized the search of Robert L. Krug's 1989 Oldsmobile, vehicle identification number 2G3AM51N7K230, and his brown briefcase. Id. ¶ 15. The search of the briefcase resulted in the seizure of various papers. Id. ¶ 16.")

[4]("Accordingly, the motion for summary judgment on the claims arising from the van searches is denied with leave to renew as against Defendants Waters, Hess, Buchanan, Cieplik, and the City of Troy.")(emphasis added).

[5]("Plaintiffs contend that their Fourth Amendment rights were violated because the 1989 Oldsmobile, although the subject of a search warrant issued on June 13, 2001, was illegally impounded by the police on June 12, 2001. . . . While there exists no viable claim for the search of the vehicle in light of the uncontested fact that the search occurred pursuant to a valid warrant, . . . the motion for summary judgment on the claims arising from the purported seizure of the 1989 Oldsmobile must be denied.")

[6]("At the Plaintiffs' New Baltimore residence, the police observed four vans in the driveway. Bonnie Krug advised the police that the vans belonged to Robert Krug. When asked, Bonnie Krug provided the keys to one of the vans to Officer Hess and Hess then searched through the van. There is no dispute that the van that was searched was owned by Robert Krug. See Pl. MOL, p. 16. Bonnie Krug has not provided facts from which a reasonable fact finder could conclude that she had a reasonable expectation of privacy in the van or any packages in the van.")(emphasis added).

[7]("The police believed that Robert Krug rented a truck from the Budget Car Rental agency to be used as a getaway vehicle after robbing the HSBC Bank on Second Avenue in Troy. Because Robert Krug was apprehended as he ran from the Bank, he was unable to escape using the rented truck. Shortly after the bank robbery attempt, Robert Krug's 1989 Oldsmobile was found parked at the Budget Car Rental agency near the Albany International Airport. The police impounded the vehicle and towed it to the Troy Police Garage and then requested, and received, a warrant to search the vehicle. See Pl. Ex. M. Claims regarding the search of the vehicle were previously dismissed by the Court. Plaintiffs assert Fourth Amendment illegal seizure claims regarding the pre-warrant seizure of the vehicle.")

it was searched (Plaintiff still merely speculates that the 1989 Oldsmobile was searched when it was impounded), it was lawfully searched; and (3) the other vans on his property because there existed no evidence that these were searched. Accordingly, the Court dismissed all of Robert Krug's claims except the claims of an illegal search of one van on Plaintiff's residential property, a claim that a rented pick-up truck (allegedly intended as Robert Krug's getaway vehicle) was illegally seized and searched, and a claim that the 1989 Oldsmobile was illegally seized. See March 31, 2008 Decision & Order p. 33-34.[8]

Any argument asking for reconsideration of these decisions in the March 31, 2008 Decision and Order is untimely under the applicable limitations periods of Rule 60(b)(1), Rule 60(b)(6), and Local Rule 7.1(g). Furthermore, such arguments are without merit.

Robert Krug's remaining Fourth Amendment claims were addressed in the October 5, 2010 Decision and Order. As to the search of the van, the Court found that the officer who conducted the search (Officer Hess) was entitled to qualified immunity and that Plaintiffs failed to establish a viable Monell claim relative to this search. See 10/5/10 Dec. & Ord., pp. 7-11. Plaintiff Robert Krug presents no meritorious argument challenging these determinations.

As to Robert Krug's Fourth Amendment claims arising from the seizure of the 1989 Oldsmobile and the search and seizure of the rental vehicle, the Court dismissed these claims under the holding of Heck v. Humphrey, 512 U.S. 477 (1994). See Oct. 5, 2010 Dec. & Ord., pp. 10-13. Plaintiff now argues that, while he is currently appealing his

[8] Plaintiff Robert Krug's Notice of Motion does not reference the rental vehicle claim, see R. Krug, Notice of Motion, dkt. # 214, but because the Memorandum of Law references the Heck dismissals, and because this claim was dismissed under Heck, the Court will consider the claim under the Heck argument, *supra*.

criminal conviction for attempted robbery of the HSBC Bank on Second Avenue in Troy, New York, he has not raised the validity of these searches and seizures in his appeal. Therefore, he is of the opinion that Heck has no application to these claims because success on these claims would not imply the invalidity of his conviction.

While the Court has recognized in this case that a "'suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction,'" Dec. 8, 2005 Dec. & Order, dkt. # 60, p. 11 (quoting Heck, 512 U.S. at 487 n. 7), Heck also instructs that "[i]n order to recover compensatory damages [based on an allegedly unreasonable search], the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does not encompass the 'injury' of being convicted and imprisoned." Heck, 512 U.S. at 487 n. 7. Plaintiff Robert Krug neither made factual allegations in the Amended Complaint, dkt. # 40, nor provided evidence in opposition to the second motion for summary judgment, see dkt. #s 145 & 146, indicating that he suffered any actual damages from the seizure of his 1989 Oldsmobile or the search and seizure of the rental vehicle. Accordingly, the only actual injury conceivable arising from these asserted constitutional violations was the fact of Plaintiff's conviction which, under Heck, is barred. See Marshall v. City of New York, 2010 WL 4739810, at *2 (2d Cir. Nov. 17, 2010);[9]

[9] ("The only injury which can be construed from the facts of the complaint is the one for which plaintiff may not recover, namely his conviction and imprisonment. Therefore, plaintiff has not stated a claim for violation of his Fourth Amendment rights." )(citing Heck)

Smythe v. Nolley, 1997 WL 714238, at * 5 (W.D.N.Y. Sept. 12, 1997);[10] see also Cougle v. County of DeSoto, Miss., 303 Fed. Appx. 164, 165 (5th Cir. 2008);[11] Williams v. Ontario County Sheriff's Dept., 662 F. Supp.2d 321, 327 (W.D.N.Y. 2009);[12] Bridgeforth v. County of Rensselaer, 2008 WL 5156936, at *2 (N.D.N.Y. Dec. 8, 2008);[13] Shaughnessy v. Garrett, 2006 WL 3146355 (N.D.N.Y., Oct. 30, 2006).[14]

For the reasons discussed above, Plaintiff Robert Krug's motion for reconsideration is denied.

**(b) Motion for New Trial or JMOL**

Plaintiff Bonnie Krug argues that she is entitled to a new trial or a JMOL because the verdict was against the weight of the evidence. In making this argument, she challenges the credibility assessment made by the jury of the defense witnesses and asserts that under her version of events, which the jury should have accepted, she is

---

[10](“Considering the holding of Heck, and in particular the impact of footnote 7, courts in the Second Circuit have held that in order to state a § 1983 claim for damages based on the conduct of government officials that resulted in the plaintiff's conviction, the plaintiff must show not only that the challenged conduct was unlawful but also that it caused compensable injury apart from the conviction and punishment.)(citations omitted)

[11](affirming grant of summary judgment under Heck where plaintiff's complaint challenging unlawful search and arrest would necessarily imply invalidity of revocation of probation)

[12](“Here, Plaintiff's allegation that his conviction was predicated on an unlawful search and seizure in violation of Plaintiff's Fourth Amendment rights necessarily challenges the validity of Plaintiff's conviction as the fruits of the stop at issue were the basis of Plaintiff's weapons and narcotics convictions in state court.”)(citing Heck)

[13](“Any decision rendered in Plaintiff's favor on his attacks on the manner in which the Defendant Police Officers entered Plaintiff's residence, possibly seized evidence, and arrested him, will invariably call into question the validity of the conviction and sentence for which he, by his own admission, is currently serving time in prison and is currently attacking in state court. Thus, Plaintiff's First Cause of Action should be dismissed as barred by Heck v. Humphrey.”)

[14](“In this case, because a judgment in Plaintiff's favor that her arrest and the search and seizure of her horses were unlawful would “necessarily imply” the invalidity of the ACD entered on the charges against her, the Heck doctrine bars these claims.”)

entitled to judgment as a matter of law or a new trial on her claims. The Court disagrees.

The trial was relatively straightforward and simple. The issues for the jury to decide were (1) whether Plaintiff voluntarily went to Defendant Water's office in the Troy Police Department headquarters and then voluntarily remained with Waters while the police searched her residence and another residential property that she owned; and (2) whether Plaintiff voluntarily and knowingly signed consent forms so that the police could search these locations. Three witnesses testified: Plaintiff Bonnie Krug, Defendant John Waters, and Troy Police Officer Terrance Buchanan who testified for the defense. The verdict reveals that the jury accepted the defense witnesses' version of events, which, evidently, the jury found to be the more credible version of what occurred. The jury was free to determine the credibility of these witnesses, and the Court does not find that Waters and Buchanan were so lacking in credibility as witnesses that the jury could not have properly believed all, or part, of their testimony. The Court will not upset this credibility assessment and Plaintiff's argument that the jury erred by rejecting her version of events is without merit. The Court finds that the verdict was adequately supported by the evidence in this case, and the Court does not find that the verdict was egregious or that the jury reached a seriously erroneous result. A JMOL or a new trial will not be granted on this ground.

Plaintiff next argues that she is entitled to a new trial because the defense listed FBI Agent Christopher Cieplik on their witness list but did not call him to testify at trial. Agent Cieplik had been a defendant in this action, was represented by separate counsel from the trial defendants, and was dismissed from the action by Stipulation and Order (which was signed by Plaintiff's counsel) entered before trial. See Stip & Ord, dkt. # 199. At the beginning of the trial, Defense counsel indicated that he would not be calling Cieplik

as a witness so Plaintiff's counsel requested that he be allowed to read from Cieplik's deposition. The Court denied the application because Plaintiff could not demonstrate Cieplik's unavailability. See Fed. R. Evid. 804. The simple fact that Defendants did not call a potential witness listed on their pre-trial witness list did not deprive Plaintiff of the ability to call him to testify and did not deny Plaintiff a fair trial.

Moreover, no missing witness charge was requested at trial and, had one been requested, it would have been denied. Plaintiff has presented no facts indicating that she was unable to secure Cieplik's attendance at trial by way of a subpoena, and there is no evidence that Cieplik was under the control of the trial defendants. See United States v. Myerson, 18 F.3d 153, 158 (2d Cir. 1994).[15] The absence of Cieplik's testimony at trial does not entitle Plaintiff to a new trial or a judgment as a matter of law.

Finally, Plaintiff argues that she is entitled to a JMOL or a new trial because her counsel was "ineffective" in failing to object to defense counsel's "prejudicial statements and innuendos," in failing to object to the admission of certain evidence, and in failing to raise certain issues and inconsistencies relative to Defendants' evidence. Pl. Mol pp. 9-11. dkt. # 219.

Plaintiff's arguments are without merit. First, "'there is no constitutional or statutory right to effective assistance of counsel in a civil case.'" Reid v. Rafferty, 2005 WL 2001881, at * 2 (S.D.N.Y. Aug. 19, 2005)(quoting Watson v. Moss, 619 F.2d 775, 776 (8th Cir.1980) and citing United States v. Coven, 662 F.2d 162, 176 (2d Cir.1981)). Second,

---

[15] ("[W]hen a party has it peculiarly within its power to produce witnesses and fails to do so, the jury may infer that the testimony, if produced, would be unfavorable to that party. However, when a witness is equally available to both sides, the failure to produce is open to an inference against both parties.")(citations and quotation marks omitted)

Plaintiff has pointed to no statements or innuendos by Defense counsel that prejudiced Plaintiff's ability to receive a fair trial. Third, the Court's instructions to the jury, which included the instructions that the jury was to decide the case based on only the evidence admitted at trial and that the statements of counsel were not evidence, cured any potential prejudice resulting from any statements by counsel. See Tesser, 190 F. Supp. at 433.[16] Fourth, Plaintiff has not pointed to any evidence, whether objected to or not, which prejudiced her right to a fair trial and which could be deemed to have improperly swayed the fact finder's judgment. See Perry v. Ethan Allen, Inc., 115 F.3d 143, 150 (2d Cir. 1997).[17] And Fifth, Plaintiff's arguments that attempt to fill the gaps and weaknesses in her case; that reargue the conclusions and inferences that the jury should have drawn from the evidence; and that attempt to present a new tactical approach that counsel could have taken at trial are insufficient to warrant a new trial or a JMOL. For these reasons, Plaintiff's motion for a JMOL or, in the alternative, a new trial is denied.

**V. CONCLUSION**

For the foregoing reasons, Plaintiff Robert L. Krug's motion for reconsideration [dkt. # 214] is **DENIED**; and Plaintiff Bonnie S. Krug's motion for a judgment as a matter of law or, in the alternative, for a new trial, [dkt. # 219] is **DENIED**.

---

[16] ("I find that any potential prejudice resulting from statements by defense counsel which may have verged on speculation was adequately cured by the instructions to the jury, and in any case, in light of all the other evidence, such statements could not be considered so substantially prejudicial as to in some material respect have swayed the factfinder's judgment.")(internal quotation marks and citations omitted)

[17] ("The trial court has broad discretion over the admission of evidence, and its evaluation of relevance is entitled to substantial deference. Evidentiary rulings ordinarily will not be overturned absent an abuse of discretion. Further, even an erroneous evidentiary ruling will not lead to reversal unless affirmance would be inconsistent with substantial justice. We will not conclude that a substantial right was affected unless it is likely that in some material respect the factfinder's judgment was swayed by the error." )(internal quotation marks and citations omitted)

**IT IS SO ORDERED**

DATED:December 10, 2010

Thomas J. McAvoy
Senior, U.S. District Judge